UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA PINEDA, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SUN VALLEY PACKING, L.P.,<br><br>Defendant. | No. 1:20-cv-00169-DAD-EPG<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION<br><br>(Doc. Nos. 23, 32, 48, 50, 51, 53) |

This matter is before the court on the motion to compel individual arbitration filed by defendant Sun Valley Packing, L.P., on June 4, 2020.[1] (Doc. No. 23.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, the pending motion was taken under submission on the papers. (Doc. No. 24.) For the reasons explained below, the court will deny defendant's motion to compel individual arbitration.

---

[1] The undersigned apologizes for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. While that situation was partially addressed by the U.S. Senate's confirmation of a district judge for one of this court's vacancies on December 17, 2021, another vacancy on this court with only six authorized district judge positions was created on April 17, 2022. For over twenty-two months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants. That situation resulted in the court not being able to issue orders in submitted civil matters within an acceptable period of time and continues even now as the undersigned works through the predictable backlog. This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

1

**BACKGROUND**

Plaintiff Leticia Pineda, a seasonal agricultural worker, initiated this putative wage and hour class action against defendant Sun Valley Packing, L.P., on October 23, 2019 in the Fresno County Superior Court. (Doc. No. 1 at 3.) On December 27, 2019, plaintiff filed the operative first amended complaint, in which she alleges claims under the California Labor Code, including for failure to pay overtime wages, provide meal periods, pay timely wages upon cessation of employment, and furnish accurate wage statements. (Doc. No. 1-1 at 3.) Plaintiff also asserts a claim under California's Unfair Competition Law, as well as a representative action claim for civil penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"). (*Id.*)

On January 31, 2020, defendant removed this action to this federal court, alleging that diversity jurisdiction over this action exists under the Class Action Fairness Act of 2005 because defendant employs an average of 1,000 employees in its agricultural packing plant as seasonal workers during the packing season (approximately May through October annually), and several of those workers are permanently domiciled in Mexico. (Doc. No. 1 at 2–6.)

On June 4, 2020, defendant filed the pending motion to compel arbitration of plaintiff's individual claims in this action based on two contractual agreements that plaintiff entered into with defendant at the start of the 2019 and 2020 packing seasons. (Doc. No. 23-1 at 7.) According to defendant, those agreements require the parties "to arbitrate on an individual basis any and all disputes among them occurring at any time for any reason." (*Id.*) Specifically, defendant relies upon an arbitration provision in its 2019 Employee Handbook because plaintiff signed an "Acknowledgement of Receipt" of that handbook on April 5, 2019 ("the 2019 Agreement"). (*Id.*) Defendant also relies upon an arbitration agreement in its 2020 "Letter Employment Contract," which plaintiff signed on April 24, 2020 ("the 2020 Agreement"). (*Id.*) According to defendant, plaintiff agreed to arbitrate any disputes with her employer, including the various wage, hour, and other labor-related claims alleged in this action, on an individual basis in "binding arbitration before a neutral retired judge in accordance with the Federal Arbitration Act," and plaintiff also waived the right to pursue class actions and representative actions, such as one under PAGA. (*Id.* at 7–10.) Thus, defendant requests that the court grant its motion to

compel arbitration of plaintiff's individual claims, dismiss all of plaintiff's class claims with prejudice, and dismiss plaintiff's putative PAGA collective claim without prejudice. (*Id.* at 29–31.)

On June 23, 2020, plaintiff filed an opposition to the pending motion to compel arbitration, arguing that neither the 2019 Agreement nor the 2020 Agreement are valid, enforceable agreements to arbitrate plaintiff's claims. (Doc. No. 25 at 10.) According to plaintiff, both agreements are unconscionable (*id.* at 15–23), and defendant "Sun Valley Packing, L.P." is not a signatory to the 2020 Agreement nor mentioned at all in that agreement, which was signed only by "Valle Del Sol, LLC" and plaintiff (*id.* at 24).

On June 30, 2020, defendant filed a reply to plaintiff's opposition, in which defendant concedes that certain provisions of the agreements are unconscionable and should be severed but maintains that the agreements remain otherwise enforceable. (Doc. No. 26 at 16–18, 21–22.) Defendant also contends that plaintiff is engaging in "pure gamesmanship" by arguing that the 2020 Agreement was somehow unrelated to her employment with defendant because plaintiff filed a complaint with the Workers' Compensation Appeals Board specifically alleging that she suffered stress related injuries while working for defendant from May 28, 2019 to May 28, 2020. (*Id.* at 18–19.)

## LEGAL STANDARD

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In deciding a motion to compel arbitration, the court "is limited to determining (1) whether a valid agreement to arbitrate exists [within the contract] and, if it does, (2) whether the agreement encompasses the dispute at issue." *Boardman v. Pac. Seafood Group*, 822 F.3d 1011, 1017 (9th Cir. 2016) (citing *Chiron*

*Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (brackets in original)).

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985)). As such, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp.*, 473 U.S. at 626 (citation omitted).

Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An arbitration agreement may only "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "[C]ourts must place arbitration agreements on an equal footing with other contracts." *Id.* Accordingly, courts may not apply traditional contractual defenses, like duress and unconscionability, in a broader or more stringent manner to invalidate arbitration agreements and thereby undermine FAA's purpose to "ensur[e] that private arbitration agreements are enforced according to their terms." *Id.* at 344 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989)).

"To determine whether the parties formed an agreement to arbitrate, courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[U]nder California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270 (2001) ("An essential element of any contract is the consent of the parties, or mutual assent."). "Mutual assent may be manifested by written or spoken words, or by conduct, and acceptance of contract terms may be implied through action or inaction." *Knutson*, 771 F. 3d at 565 (internal citations omitted). "Thus, 'an offeree, knowing

4

that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains.'" *Id.* (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 991 (1972)). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Id.* However, "a signed agreement is not necessary to a valid arbitration agreement, and a party's acceptance may be implied." *Paxton v. Macy's W. Stores, Inc.*, No. 1:18-cv-00132-LJO-SKO, 2018 WL 4297763, at *4 (E.D. Cal. Sept. 7, 2018).

Under California law, the party moving to compel arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence. *Knutson*, 771 F. 3d at 565. "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). In determining whether an agreement to arbitrate exists, "[t]he trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination." *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 842 (2014) (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997), *as modified* (July 30, 1997)).

## ANALYSIS

The court begins by analyzing whether defendant has shown by a preponderance of the evidence that a valid agreement to arbitrate exists between itself and plaintiff. Because the court finds that defendant has not done so, the court need not address the parties' arguments regarding whether the agreements are unconscionable or otherwise unenforceable.[2]

**A.    The 2020 Agreement**

In support of its pending motion to compel arbitration, defendant has filed declarations from Mr. Casey Jones, a partner in defendant Sun Valley Packing, L.P., (Doc. No. 23-2) and from

---

[2] The court will also deny as moot plaintiff's request for leave to file supplemental authority (Doc. No. 48), which pertains to her unconscionability arguments. Relatedly, the court will also deny as moot plaintiff's motion to strike defendant's opposition thereto (Doc. No. 50).

Ms. Caroline Hurtado, a supervisor in defendant's packinghouse, (Doc. Nos. 26-3, 29), which attach as exhibits a copy of the "Letter Employment Contract" in the Spanish language that plaintiff signed on April 24, 2020 (Doc. No. 29 at 16–21), as well as an unsigned, blank copy of the English language version of the contract (Doc. No. 23-4).[3] Defendant invokes the arbitration provision appearing in paragraph 5 of this contract as the basis for compelling plaintiff to submit her claims against it to binding arbitration. (Doc. No. 23-1 at 7, 9–10.) However, as plaintiff points out in her opposition to defendant's pending motion to compel arbitration, defendant is not a signatory to the contract that plaintiff signed on April 24, 2020. (Doc. No. 25 at 23–25.)

In the English language version of the contract, the top of the first page has defendant's address block under the text "SUN VALLEY PACKING, L.P." and the first sentence of the contract reads as follows: "The purpose of this letter is to confirm the agreement between your employer 'Sun Valley Packing, LP., a California Limited Partnership' (hereinafter referred to as 'Sun Valley') and you." (Doc. No. 23-4 at 2.) Consistent with that hereinafter reference designation, the contract itself includes several references to "Sun Valley" throughout its 5 pages, though the signature block at the end of the contract states defendant's full name: "Sun Valley Packing, L.P." (*Id.* at 2–6.)

/////

---

[3] On July 1, 2020, plaintiff filed objections to the Hurtado declaration because it bore an electronic signature and did not include a statement that the declarant's original signature was retained by counsel, as required by the Local Rules. (Doc. No. 27.) However, plaintiff's objections in this regard were rendered moot the next day when defendant filed an *errata* correction to provide the Hurtado declaration bearing the original signature page. (Doc. No. 29.) Nevertheless, on July 7, 2020, plaintiff filed a motion to strike the Hurtado declaration because it contained "new" evidence that should have been submitted concurrently with defendant's motion, as opposed to being filed concurrently with defendant's reply. (Doc. No. 32.) Defendant filed an opposition to plaintiff's motion to strike, arguing that the Hurtado declaration was in "direct response" to the declaration that plaintiff submitted with her opposition, i.e., the Hurtado declaration rebuts several of the statements plaintiff made in her declaration and was therefore properly submitted with its reply. (Doc. Nos. 35 at 12–15; 36 at 7.) The court agrees. While a court "may refuse to consider new evidence submitted for the first time in a reply if the evidence should have been presented with the opening brief," *Wallace v. Countrywide Home Loans, Inc.*, No. 08-cv-1463-AG-MLG, 2009 WL 4349534, at *7 (C.D. Cal. Nov. 23, 2009), "[e]vidence submitted in direct response to evidence raised in the opposition [] is not 'new,'" *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 559 n.87 (C.D. Cal. 2014). Accordingly, plaintiff's motion to strike the Hurtado declaration (Doc. No. 32) will be denied.

In the Spanish language version of the contract that plaintiff signed, the top of the first page has defendant's address block in English (e.g., the English word "Avenue" is used instead of the Spanish word "Avenida"), but the name on the address block is "VALLE DEL SOL, LLC." (Doc. No. 29 at 16.) In addition, the first line of the contract states: "El propósito de este documento es confirmar el aceurdo entre su empleador 'Valle Del Sol, LLC, una sociedad de responsabilidad limitada de California' (en adelante 'Valle Del Sol') y usted." (*Id.*) As plaintiff represents and defendant does not dispute, that sentence translated into English states: "The purpose of this document is to confirm the agreement between your employer 'Valle Del Sol, LLC, a California Limited Liability Company' (hereinafter 'Valle Del Sol') and you." (Doc. No. 25 at 24.) Consistent with that hereinafter designation, there are many references to "Valle Del Sol" throughout the Spanish language version of the contract, though the signature block at the end of the contract states that entity's full name: "Valle Del Sol, LLC." (Doc. No. 29 at 21.) That is, the two signatories to the 2020 Agreement that plaintiff signed are plaintiff on the one hand and Valle Del Sol, LLC on the other hand, not defendant Sun Valley Packing, L.P. (*Id.*) As plaintiff correctly points out, "Sun Valley Packing, L.P. is not named anywhere in the 2020 Agreement that plaintiff signed," and "'Sun Valley Packing, L.P.' is plainly not a direct translation of 'Valle Del Sol, LLC.'" (Doc. No. 25 at 24) (noting that the Spanish word for "Packing" does not appear in the entity name "Valle Del Sol, LLC," and that the LLC designation means that the entity is a limited liability company—not a limited partnership, which is designated by "L.P.").

In its reply, defendant appears to chalk up this difference to nothing more than defendant's use of "letterhead" that reflected the Spanish translation of "Sun Valley" as "Valle Del Sol." (Doc. No. 26 at 19.) In doing so, defendant does not counter any of plaintiff's points, including that "Valle Del Sol, LLC" is not a translation of defendant's name – "Sun Valley Packing, L.P." Moreover, defendant does not respond to plaintiff's observation that defendant did not translate its entity name "Sun Valley Packing L.P." into Spanish for the Spanish language version of the 2019 Agreement (the employee handbook and acknowledgement of receipt that plaintiff signed), but rather refers repeatedly to its name in English throughout those 2019 documents, not "Valle

7

Del Sol." (Doc. No. 25 at 25.) This too strongly suggests that the signatory "Valle Del Sol, LLC" in the 2020 Agreement was not simply a mistranslation of defendant's name.

Even more concerning is the fact that in its reply brief, defendant appears to feign ignorance as to whether there exists such an entity called "Valle Del Sol, LLC," and indeed affirmatively criticizes plaintiff for engaging in "gamesmanship" in asserting that she had "contract[ed] with some unrelated third party for the 2020 season." (Doc. No. 26 at 18–19.) Yet, in the court's view it is defendant that hides the ball. Not only does defendant know that Valle Del Sol, LLC exists, but it was defendant's owner/partner Mr. Jones who created it. (Doc. No. 29 at 9–10.) Specifically, Ms. Hurtado states in her declaration that she had explained to plaintiff and the other employees during the 2020 orientation that Valle Del Sol, LLC "was a new entity that Casey Jones had created to handle the payroll writing services for Sun Valley Packing," which is owned by the Casey Jones family, and "Valle Del Sol did the check writing as a matter of convenience to the Jones family who have a lot of entities and a lot of payroll responsibilities." (*Id.*)[4]

Based on defendant's own evidentiary submissions, the court concludes that defendant has failed to establish that it was a signatory to the 2020 Agreement. Thus, defendant has not satisfied its burden to show that the 2020 Agreement constitutes an agreement between itself and plaintiff to arbitrate disputes. *See City of Riverside v. Mitsubishi Heavy Indus., LTD*, No. 13-cv-1724-BEN-KSC, 2014 WL 1028835, at *3 (S.D. Cal. Mar. 14, 2014) ("California state law states that one must generally be a party to an agreement to be bound by it or invoke it.") (citing *DMS Servs., LLC v. Superior Ct.*, 205 Cal. App. 4th 1346, 1352 (2012)); *see also Revitch v. DIRECTV, LLC*, 977 F.3d 713, 718 (9th Cir. 2020) ("Because it was not and is not now a party to the wireless services agreement between Revitch and AT&T Mobility, DIRECTV may not invoke the
/////

---

[4] Rather than engage with any of plaintiff's arguments regarding Valle Del Sol, LLC, or acknowledge that entity's existence, defendant merely asserts that "[i]f the 'letterhead' of the 2020 agreement saying 'Valle Del Sol' instead of 'Sun Valley' somehow renders the 2020 arbitration agreement inapplicable," plaintiff should still be compelled to arbitrate under the 2019 Agreement. (Doc. No. 26 at 19.)

8

agreement to compel arbitration.") (citing *DMS Servs.*, 205 Cal. App. 4th at 1352).[5]

Accordingly, defendant's motion to compel arbitration based upon the arbitration provision appearing in the 2020 Agreement will be denied.[6]

**B.     The 2019 Agreement**

Defendant also moves to compel arbitration of plaintiff's claims based upon the "Dispute Resolution" section of defendant's 2019 employee handbook because plaintiff acknowledged

/////

/////

/////

---

[5] Although courts recognize "limited exceptions . . . allowing nonsignatories to an agreement containing an arbitration clause to compel arbitration of, or be compelled to arbitrate, a dispute arising within the scope of that agreement," *DMS Servs.*, 205 Cal. App. 4th at 1353, defendant has made no attempt to argue—let alone show—that any such exception applies here. For example, nonsignatories of a contract may nonetheless enforce its terms if they are third party beneficiaries of the contract. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). As the party seeking to compel arbitration, defendant would bear the burden of putting forward evidence affirmatively establishing its status as an intended third-party beneficiary of the agreement. *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017) (affirming the denial of defendant Samsung's motion to compel arbitration "[b]ecause Samsung failed to carry its burden of proving the existence of a contract with Norcia to arbitrate" by pointing "to any evidence in the record indicating that Norcia and Verizon Wireless intended the Customer Agreement to benefit Samsung" as a third-party beneficiary). Here, defendant has not advanced any such argument nor put forth any evidence showing that it is entitled to compel arbitration as a nonsignatory beneficiary of the 2020 Agreement between plaintiff and Valle Del Sol, LLC.

[6] On September 17, 2021, plaintiff filed a request for leave to file supplemental authority to alert the court of the recent decision in *Chamber of Commerce of the United States v. Bonta*, No. 20-15291, 13 F.4th 766 (9th Cir. 2021), in which the Ninth Circuit held that California Labor Code § 432.6—a statute prohibiting employers from requiring employees to waive their right to file and pursue a civil action in court as a condition of employment—does not run afoul of the FAA. (Doc. No. 51). However, the Ninth Circuit emphasized in the decision that § 432.6(f) explicitly states that "[n]othing in this section is intended to invalidate a written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act," and therefore that statute "in no way affects the validity and enforceability" of agreements, even if they include arbitration provisions as a condition of employment. *Chamber of Com. of U.S. v. Bonta*, 13 F.4th 766, 779 (9th Cir. 2021). Accordingly, although the court grants plaintiff's request to file supplemental authority (Doc. No. 51) and has considered defendant's response thereto (Doc. No. 52), the court ultimately concludes that the Ninth Circuit decision in *Chamber of Com. of U.S.* has no bearing on the analysis set forth in this order.

receiving that handbook by signing an "acknowledgment of receipt" form on April 5, 2019.[7] (Doc. No. 23-1.) A copy of the 2019 employee handbook in the Spanish language (Doc. No. 23-6) and in the English language (Doc. No. 23-7) are attached as exhibits to the Jones declaration. A copy of the acknowledgment of receipt form that plaintiff signed on April 5, 2019, in the Spanish language, is also attached as an exhibit to that declaration. (Doc. No. 23-5.) That form has a check list of seven items, followed by a paragraph of four sentences, and a signature and date line. (*Id.* at 2.) However, the court is not aware of what is stated on that acknowledgment of receipt form because defendant has not provided the court with an English translation. Though, relevant here, neither party has asserted that the acknowledgment of receipt form itself refers to arbitration or dispute resolution.

According to her declaration, on April 5, 2019, Ms. Hurtado gave the Spanish version of the 2019 employee handbook to plaintiff and asked her to sign the acknowledgment of receipt form, which plaintiff did. (Doc. No. 29 at 6.) Mr. Hurtado declares further that "[a]s that Acknowledgment of Receipt form indicates, [plaintiff] also signed a few other documents at that time, such as the Job Application, her I-9 Forms about entitlement to legally work in this country, and information about what to do in the event of an accident." (Doc. No. 29 at 6.) The court is unable to confirm Ms. Hurtado's representation regarding what that form indicates because, as noted above, defendant did not provide the court with a translation of that form. Nevertheless, plaintiff does not controvert Ms. Hurtado's representation that she signed the acknowledgment form. In plaintiff's declaration, she states that "[a]t the beginning of the season in April 2019, defendant presented me with a stack of papers. I was required to sign a document stating that I

---

[7] Section "O. Dispute Resolution" states as follows:

> All disputes between employee and employer, whenever they arise, shall be exclusively resolved on an individual basis (for example class actions are waived) by final and binding arbitration before a neutral retired judge in accordance with the Federal Arbitration Act.
>
> Any paycheck mistakes are waived by the employee if they are not reported to the Company's Human Resource Department within ten days of receipt of the paycheck.

(Doc. No. 23-7 at 31.)

received the papers." (Doc. No. 25-2 at ¶ 4.) In addition, in summarizing relevant facts in her opposition brief, plaintiff states that she "signed the form to acknowledge that she received [seven] documents, including an employee handbook." (Doc. No. 25 at 6, 11.) Thus, there appears to be no dispute that plaintiff signed the form acknowledging her receipt of the 2019 employee handbook on April 5, 2019.

1. <u>Whether Plaintiff Consented to the 2019 Agreement</u>

Defendant argues that because plaintiff acknowledged her receipt of the 2019 handbook, which contained an arbitration provision, and she thereafter continued working for defendant, her continued employment establishes an "implied-in-fact agreement" to arbitrate regardless of whether she actually read the employee handbook. (Doc. No. 23-1 at 13–14.) Plaintiff counters that no such valid agreement to arbitrate exists because she did not manifest her consent to be bound to arbitrate by signing the acknowledgment of receipt form, which did not mention arbitration at all or even reference the two-sentence dispute resolution provision located on page 26 of the 66-page employee handbook. (Doc. No. 25 at 11–15.)

The court addresses the parties' arguments and the legal authorities cited in support thereof, in turn, below.

a. *Implied Consent Based on Plaintiff's Continued Employment*

In support of its argument that plaintiff consented to the arbitration provision in the 2019 employee handbook by continuing her employment with defendant, defendant relies primarily on this court's decision in *Martinez v. Vision Precision Holdings, LLC*, No. 1:19-cv-01002-DAD-JLT, 2019 WL 7290492, (E.D. Cal. Dec. 30, 2019), as well as a few California state court decisions in cases involving arbitration provisions appearing in employee handbooks. (Doc. No. 23-1 at 12–15.) However, as plaintiff points out in her opposition (Doc. No 25 at 12 n.2), those cases are all distinguishable because the documents signed by the employees in those cases specifically referenced arbitration, whereas the acknowledgment of receipt form that plaintiff signed in this case does not.

For instance, unlike the acknowledgment of receipt in this case, the document that the employee signed in *Martinez* was itself an arbitration agreement, which clearly stated above the

11

signature line that "[b]y signing below, you agree to submit all disputes . . . for resolution by binding arbitration," and specified that "[a]s a condition of your employment . . . you and [defendant] agree that certain claims arising out of or relating to your employment relationship with [defendant] . . . must be submitted for resolution by final binding confidential arbitration." 2019 WL 7290492, at *1; *see also* Quinn Decl., Ex. A, *Martinez*, No. 1:19-cv-01002-DAD-JLT, Doc. No. 5-2 at 5, (E.D. Cal. Aug. 14, 2019).  Thus, defendant's reliance on the decision in *Martinez* is unavailing.

The court also finds defendant's reliance on the decision in *Diaz v. Sohnen Enterprises*, 34 Cal. App. 5th 126 (2019), to be misplaced because the parties in that case did not dispute that the employee was notified that binding arbitration was a condition of employment and nevertheless continued working.  In *Diaz*, the court addressed whether binding arbitration can be a condition of employment and concluded that "California law in this area is settled:  when an employee continues his or her employment after notification that an agreement to arbitration is a condition of continued employment, that employee has impliedly consented to the arbitration agreement." 34 Cal. App. 5th at 130.  But the court in *Diaz* stressed that notification of that condition of employment is critical for finding of such implied consent.  The court emphasized that the parties in that case did not dispute that the plaintiff was notified that her employer "was adopting a new dispute resolution policy requiring arbitration of all claims," that employees needed to sign the arbitration agreement, and that "continued employment by an employee who refused to sign the agreement would itself constitute acceptance of the dispute resolution agreement." *Id.* at 128. The parties in *Diaz* also did not dispute that when the plaintiff indicated that she did not wish to sign the arbitration agreement, the employer's chief operating officer and human resources employee met with the plaintiff a second time to advise her again that "continuing to work constituted acceptance of the agreement." *Id.*  Relying on those undisputed facts, the state appellate court found that a binding agreement to arbitrate was formed by the plaintiff thereafter continuing to work.  *Id.*  Importantly, the court distinguished a case in which an "employee acknowledged receipt of an employee handbook containing an arbitration provision, but the acknowledgement form did not reference or contain any agreement to comply with the arbitration

12

provision." *Id.* at 130 (citing *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1173 (2007)). As the court in *Diaz* explained, "[t]he general acknowledgment [in *Mitri*] stands in distinction to the express explanation provided twice to Diaz: that continued employment would itself be a manifestation of agreement to the arbitration provisions." *Id.* at 130. In other words, the plaintiff in *Diaz* indisputably had notice that agreement to arbitrate was a condition of employment, whereas the plaintiff in *Mitri* was not provided such notice.

In contrast to *Diaz* and similar to *Mitri*, the parties here dispute whether plaintiff was notified that agreeing to arbitrate was a condition of employment with defendant. In her declaration, plaintiff states: "[n]o one told me that the employee handbook had an arbitration clause or that by accepting employment at Sun Valley Packing, L.P., I was agreeing to arbitrate any claims against the company." (Doc. No. 25-2 at ¶ 4.) To rebut plaintiff's statement, Ms. Hurtado states in her declaration that during the 2019 orientation, she "specifically stated to [plaintiff] and the group that signing the Acknowledgment of Receipt of the Handbook, which contained the binding arbitration clause that I had talked about with them, was a condition of employment" and "explained to them that simply going to work for the packinghouse was the same thing as signing and agreeing in writing to binding arbitration." (Doc. No. 29 at 7.) Notably, the employee handbook itself does not state that agreeing to arbitrate disputes is a condition of employment.[8] Defendant's position in this regard appears to be that the existence of that condition was communicated to plaintiff and other employees orally during orientation. But the handbook specifically states that "[n]one of these policies or procedures can be amended, altered or modified in any way by oral statements" and "[t]his Handbook . . . takes precedence over all memoranda or oral descriptions of the terms and conditions of employment." (Doc. No. 23-7 at 6.) That is, defendant's argument that an oral statement by Ms. Hurtado somehow imposed a condition of employment is defeated by the very document that defendant relies upon: its own employee handbook. For this reason, the court need not resolve the parties' factual

---

[8] For comparison, the "Conflicts of Interest" section of the handbook explicitly states that "[a]s a condition of employment, no employee or any member of employee's immediate family, without prior written consent of the authorized management, may have a financial interest in" a supplier, customer, or competitor of Sun Valley. (*See* Doc. No. 23-7 at 39.)

13

dispute over whether or not Ms. Hurtado had, in fact, made those oral statements to plaintiff.  In any event, it is not evident—let alone undisputed—that agreeing to the arbitration provision in the employee handbook was a condition of plaintiff's employment with defendant and that plaintiff was notified of that condition.  As a result, defendant's reliance on the decision in *Diaz* is unavailing.  Moreover, defendant does not acknowledge that the court in *Diaz* distinguished that case from *Mitri*, a case that is actually more similar to this one.

Notably, in *Mitri*, the California Court of Appeal affirmed the trial court's denial of an employer's motion to compel arbitration and rejected the employer's argument that "the acknowledgment receipt form signed by each plaintiff constitutes evidence of each plaintiff's acquiescence to the arbitration agreement provision in the employee handbook" because "[c]onspicuously absent from the acknowledgment receipt form is any reference to an *agreement* by the employee to abide by the employee handbook's arbitration agreement provision." 157 Cal. App. 4th at 1173.  Here, because defendant bears the burden to show that an agreement exists, it is telling that defendant has neither provided a translation of the acknowledgment form that plaintiff signed nor asserted that the acknowledgment form itself refers to arbitration or dispute resolution.  The court reasonably infers that, like the acknowledgment form at issue in *Mitri*, any reference to the handbook's arbitration provision is "conspicuously absent" from the acknowledgment form that plaintiff signed.  For that reason, the other cases relied upon by defendant are similarly distinguishable from this one because the handbook acknowledgement forms in those cases specifically notified the employee that there was an agreement to arbitrate in the handbook.[9]

---

[9] *See 24 Hour Fitness, Inc. v. Superior Ct.*, 66 Cal. App. 4th 1199, 1215 (1998) (finding that an arbitration agreement existed where there was no dispute that the "'Certificate Of Acknowledgment Of Receipt & Reading The Personnel Handbook,' [] explicitly refers to the handbook's section on arbitration"); *see also Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 377 (2016) (finding that an arbitration agreement existed because "the acknowledgement form which plaintiff signed included acknowledging receiving *both* the Employee Handbook and the attached arbitration agreement," and the handbook "states without equivocation that receipt and agreement to the mandatory arbitration policy is 'an absolute prerequisite' to hiring and continued employment" and that if "an applicant fails to execute the Agreement to Arbitrate yet begins employment, that employee will be deemed to have consented to the Agreement to Arbitrate by virtue of receipt of this Handbook"); *Aquino v. Toyota Motor Sales USA, Inc.*, No.

In her opposition to the pending motion to dismiss, plaintiff cites several cases in which courts have found that handbook acknowledgments that do not specifically reference the handbook's arbitration provision are insufficient to establish enforceable agreements to arbitrate. (Doc. No. 25 at 11–15.) These cases relied upon by plaintiff are on point and persuasive here. In apparent agreement, defendant does not mention these cases in its reply brief or attempt to distinguish them.

The court finds the decision in *Esparza v. Sand & Sea, Inc.*, 2 Cal. App. 5th 781 (2016), which in turn relied on the decision in *Mitri*, to be particularly persuasive in resolving the issue presented. In *Esparza*, the plaintiff was given an employee handbook on her first day of work and signed a form acknowledging that she received that handbook and was expected to read it within one week. 2 Cal. App. 5th at 784–85. There was an "Agreement to Arbitrate" section in that handbook, but the acknowledgement form itself "did not state that [plaintiff] agreed to abide by the arbitration agreement within the handbook." *Id.* at 784, 790. The California Court of Appeal in *Esparza* rejected the defendant employer's argument "that because [the plaintiff] was expected to read the handbook within a week, and she continued to work [for defendant] after that week, she must have impliedly agreed to the arbitration provision." *Id.* at 790. In concluding that the defendant had not satisfied its burden to show that an agreement to arbitrate existed, the court emphasized that neither the acknowledgment form nor the employee handbook clearly stated that agreeing to arbitrate was a condition of employment and/or that by commencing/continuing employment, the employee would be deemed to have consented to that condition. *Id.* (noting that "[a]bsent a clear agreement to submit disputes to arbitration, courts will not infer that the right to a jury trial has been waived") (citation omitted). As noted above, here too the acknowledgment form plaintiff signed did not mention the arbitration provision and the handbook does not state that agreeing to arbitrate is a condition of employment.

---

15-cv-05281-JST, 2016 WL 3055897, at *4 (N.D. Cal. May 31, 2016) (finding that an implied-in-fact agreement to arbitrate existed where the plaintiff "had notice of Toyota's implementation of the arbitration agreement, and she continued to work for Toyota after the Agreement went into effect," noting that Toyota's written announcement "specifically stated: '[i]f you do not opt out, and you remain employed after November 10, 2013, you will have consented to the Mutual Agreement to Arbitrate Claims'").

15

Lending further support to its conclusion, the court in *Esparza* relied on another case, also cited by plaintiff here, in which an employer's motion to compel arbitration was denied because the "acknowledgment form did not reference the arbitration clause, much less advise plaintiff that he would be bound by it." *Sparks v. Vista Del Mar Child & Fam. Servs.*, 207 Cal. App. 4th 1511, 1522 (2012), *abrogated on other grounds by Harris v. TAP Worldwide, LLC,* 248 Cal. App. 4th 373 (2016). The California Court of Appeal in *Sparks* explained that:

> [t]o support a conclusion that an employee has relinquished his or her right to assert an employment-related claim in court, there must be more than a boilerplate arbitration clause buried in a lengthy employee handbook given to new employees. At a minimum, there should be a specific reference to the duty to arbitrate employment-related disputes in the acknowledgment of receipt form signed by the employee at commencement of employment.

*Id.* Here, as in *Sparks*, *Esparza*, and *Mitri*, there was no such reference to the arbitration provision in the acknowledgment form that plaintiff signed, and there was no indication in the handbook itself that by commencing and continuing employment, plaintiff was agreeing to be bound to arbitrate disputes.

Accordingly, the court concludes that defendant has not shown that an implied-in-fact agreement to arbitrate exists based upon plaintiff's continued employment at defendant's packinghouse after acknowledging receipt of the employee handbook, which in turn contained an arbitration provision. This conclusion is also supported by recent decisions in cases addressing similar facts. *See Mendoza v. Trans Valley Transp.*, 75 Cal. App. 5th 748, 791 (2022) ("reject[ing] Employers' contention that Mendoza entered into an implied-in-fact agreement to arbitrate by simply receiving a copy of the Handbook and working for [employer]")[10]; *Cf. Mcunu v. Trader Vic's*, No. 19-cv-07817-EMC, 2020 WL 12894939, at *5–6 (N.D. Cal. May 20, 2020) (distinguishing the decisions in *Esparza* and *Sparks* and concluding that an arbitration agreement existed where the acknowledgment of receipt form that the employee signed specifically called out the arbitration agreement, which was in the handbook and explicitly stated that agreeing to arbitrate was a condition of employment).

---

[10] Plaintiff's request for leave to file supplemental authority to bring to the court's attention this recent decision in *Mendoza* (Doc. No. 53) is granted.

1                    b.        *Consent Based on Alleged Use of the Arbitration Provision*

2           The court also rejects defendant's unsupported and somewhat vague argument—asserted

3   for the first time in its reply brief—that plaintiff knew of the arbitration provision and impliedly

4   agreed to be bound by it because she allegedly "invoked the Employee Handbook's dispute

5   resolution process," on two separate occasions in 2019, "one regarding a claim involving sexual

6   harassment and another involving a physical altercation." (Doc. No. 26 at 10.)  Defendant does

7   not elaborate any further in its reply brief, but would apparently have the court believe that

8   plaintiff submitted a dispute *to arbitration* twice.  Not so.  Not even once.  A close review of the

9   portions of the Hurtado declaration that defendant cites in advancing this argument plainly do not

10  support it or warrant such a misleading characterization.

11          In the first alleged incident, plaintiff complained to Ms. Hurtado (her supervisor) about a

12  fellow worker engaging in sexual harassment, and Ms. Hurtado served as a translator for a

13  meeting between plaintiff and Mr. Jones in his office, during which the dispute was settled.  (Doc.

14  No. 29 at 8.)  Though Ms. Hurtado characterizes this incident as "utiliz[ing] the arbitration

15  provision" and states that she mentioned to plaintiff it was common to meet with Mr. Jones "to

16  discuss the possibility of a settlement before the arbitrator is actually hired" (*id.*), what Ms.

17  Hurtado describes appears to be consistent with the "policy against harassment" section of the

18  employee handbook, not the arbitration provision (*see* Doc. No. 23-7 at 42).  Specifically, the

19  "policy against harassment" section of the handbook—which does not mention arbitration at all—

20  instead provides in relevant part that an employee who believes they are the victim of any type of

21  harassment should report the incident to their supervisor or to Lex Swanson [in Human

22  Resources] or [CEO] Walter Jones," and the company will investigate, and "the complainant will

23  be made whole, to the extent possible, for his or her losses." (Doc. No. 23-7 at 42–44.)  In

24  contrast, there is nothing in the arbitration provision to suggest that an employee is to first meet

25  with Mr. Jones to discuss settlement before engaging an arbitrator.

26          Similarly, in the second alleged incident, a different fellow employee complained to Ms.

27  Hurtado that plaintiff had pushed and shoved her, and Ms. Hurtado met with the complainant,

28  plaintiff, and Mr. Jones to settle the dispute.  (Doc. No. 29 at 8–9.)  In her declaration, Ms.

17

Hurtado characterizes this incident as "[t]he second time I was involved with [plaintiff] in an arbitration claim," and again asserts that what occurred was a "pre-arbitration settlement conference." (*Id.* at 9.) Here too, however, what Ms. Hurtado has described instead aligns with defendant's harassment policy, not the arbitration provision of the employee handbook. Accordingly, these characterizations do not suffice to support defendant's assertion that plaintiff had twice utilized the arbitration provision of the handbook.

In sum, defendant has not shown that the 2019 Agreement constitutes a valid agreement to arbitrate between plaintiff and itself based upon plaintiff's continued employment after signing the acknowledgment of receipt of the employee handbook or plaintiff's alleged utilization of the arbitration provision to resolve two employment related disputes in 2019.

Accordingly, defendant's motion to compel arbitration based upon the arbitration provision in the 2019 Agreement will also be denied.

**CONCLUSION**

For the reasons stated above:

1. Defendant's motion to compel arbitration (Doc. No. 23) is denied;
2. Plaintiff's motion to strike the Hurtado declaration (Doc. No. 32) is denied;
3. Plaintiff's first request for leave to file supplemental authority (Doc. No. 48) and plaintiff's motion to strike defendant's opposition thereto (Doc. No. 50) are denied as having been rendered moot by this order;
4. Plaintiff's second request for leave to file supplemental authority (Doc. No. 51) is granted;
5. Plaintiff's third request for leave to file supplemental authority (Doc. No. 53) is granted; and
6. This matter is referred to the assigned magistrate judge for purposes of issuing a scheduling order.

IT IS SO ORDERED.

Dated: **May 23, 2022**

UNITED STATES DISTRICT JUDGE